UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILL E. WILLIAMS,

        Plaintiff,

                                              Case No. 11-10963

vs.                                         HON. GEORGE CARAM STEEH

AMERICAN WESTERN HOME INSURANCE
COMPANY,

        Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

    I.      Introduction

Plaintiff, Will Williams, filed the instant action seeking to recover commercial insurance proceeds from defendant, American Western Home Insurance Company ("American Western"), under a commercial fire policy, number QK0003729H, for claimed losses after an October 3, 2009 fire at Williams's bar, J.T.'s Bar & Grill, located at 19339 Schoolcraft Road, Detroit, Michigan. American Western now moves for summary judgment on Williams's claims of breach of contract and violation of the Michigan Uniform Trade Practices Act, MICH. COMP. LAWS § 600.2001 et seq. For the reasons that follow, the court grants American Western's motion for summary judgment.

    II.      Factual Background

Williams applied for the subject commercial insurance policy on June 10, 2009 with the assistance of his independent insurance agent, T.L. Whatley & Associates. The application was sent to Arlington Roe & Company who acted as underwriter for American Western. In the application, Williams's represented that "all cooking surfaces" were

-1-

covered with Underwriters Laboratory Approved ("UL") automatic fire suppression systems, specifically, an ANSUL R102 Wet Chemical System. See Def.'s Mot. for Summ. J., Ex. 2. Additionally, the application indicated that there was adequate clearance between hoods, ducts, cooking equipment and combustible materials, and that there were no uncorrected fire code violations. Id.

Andy Roe, Vice President of Commercial Lines Underwriting for Arlington & Roe, indicates that all of the described representations in Williams's application were material to the risk and the underwriting decision to accept the risk and issue and maintain the subject policy in force. See Def.'s Mot. for Summ. J., Ex. 1, Aff. of Andy Roe at ¶ 4. He further states that had he been advised during or after the application process that the representations in the application were false, he would not have accepted the application for insurance or would have cancelled the subject policy once he discovered their falsity. Id.

The policy stated that maintenance and use of the ANSUL R102 system was a condition precedent to maintaining coverage under the policy. See Def.'s Mot. for Summ. J., Ex. 12 ("As a condition of this insurance, you are required to maintain the 'ANSUL SYSTEM.'") The policy also warned that loss or damage resulting from fire, if prior to the fire, Williams "[k]new of any suspension or impairment in any protective safeguard listed in the Schedule" or "[f]ailed to maintain any protective safeguard" would bar recovery for claimed fire losses. The policy also stated that "[t]his Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time." See Def.'s Mot. for Summ. J., Ex. 12.

The October 3, 2009 fire was investigated by Unified Investigations & Sciences

certified fire investigators, retired fire chief Thomas Kropf and engineer Louis F. Molnar. After conducting their investigation, Kropf and Molnar concluded that while there was an electric grill and electric deep fryer covered by the ANSUL R102 fire suppression system, there was also an unprotected ten burner natural gas stove and a natural gas deep fat fryer that were not covered by a fire suppression system as mandated by the fire code. They also concluded that the source of the fire was an open flame from the ten burner stove which was unattended and/or unsupervised and was connected to the natural gas line before and at the time the building caught fire. See Def.'s Mot. for Summ. J., Exs. 3 & 4.

Kropf and Molnar also concluded that the gas stove lacked required clearance between a combustible wall on one side and a gas deep fat fryer on the other side. Id. Their investigation uncovered an uncorrected City of Detroit Fire Code "Notice of Violation" reflecting a compliance date of March 31, 2009 on the bulletin board in the rear office of J.T.'s Bar & Grill. Id. The violation stated in part that: "[N]o automatic fire suppression system was installed to support the ten burner stove top" and "[n]o fire protection type wall coverings were installed to adjacent wall areas near the ten burner stove top." Id. American Western also maintains that photos taken by Kropf and Molnar support the finding that the ten burner gas stove was hooked up to the gas line, the valve position was turned to "on", it had no fire suppression system and had been in use.[1] Id.

On June 23, 2010, Williams was deposed in connection with his claim for losses submitted to American Western. Williams testified, contrary to the findings of Kropf and Molnar, that the ten burner gas stove was never used and was not hooked up to the gas

---

[1] Williams removed the ten burner gas stove, gas connection and valve position immediately after the fire.

line at the time of the fire. Williams further testified that he had no knowledge of the Detroit Fire Department's Code Violation. The citation was given to Rosalyn Grundy, a daytime employee of J.T.'s Bar & Grill. Williams provides an unsigned affidavit from Grundy, wherein she indicates that "to the best of her recollection she never gave plaintiff a copy of the violation notice. . . ." The court cannot rely on this evidence however because it is unsigned. Williams also provides his affidavit, and an affidavit from Odell Marks, night manager of J.T.'s Bar &Grill, wherein both attest that the ten burner gas stove was not operational, and not connected to the gas line. See Plf.'s Resp., Exs. 1 and 2. While Marks never saw the gas stove hooked up to the gas line, the gas line was behind the stove and not clearly visible from the front. Id., Ex. 2. Williams stated that because food service was inconsequential to his business, he subcontracted out food service, and the contract cooks were responsible for day to day food operation. Id., Ex. 1. If the gas stove was connected, it was without his knowledge and against his explicit instructions that it never be connected to the gas line.

After the investigation and Williams's deposition, American Western advised Williams that it was rescinding the policy based on misrepresentations in the application. Further, American Western indicated that Williams's misrepresentations during the claims process also provided a basis to hold the policy void. American Western refunded Williams's premium payment and informed him they would not honor his fire loss claim.

 III. Law & Analysis

 A. Standard of Review

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean

v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

  B. American Western's Motion for Summary Judgment

The law in Michigan is well settled "that where an insured makes a material misrepresentation in the application for insurance, . . . the insurer is entitled to rescind the policy and declare it void ab initio. Lakes States Ins. Co. v. Wilson, 231 Mich. App. 327, 331, 586 N.W.2d 113 (1998). Further, "[r]escission is justified without regard to the intentional nature of the misrepresentation, as long as it is relied upon by the insurer." Id.; see also, Lash v. Allstate Ins. Co., 210 Mich. App. 98, 103; 532 N.W. 2d 869 (1995) ("Rescission is justified in cases of innocent misrepresentation if a party relies upon the misstatement, because otherwise the party responsible for the misstatement would be unjustly enriched if he were not held accountable for his misrepresentation."). "Reliance may exist when the misrepresentation relates to the insurer's guidelines for determining eligibility." Lakes States, 231 Mich. App. at 331.

Williams argues that there was no material misrepresentation made in the application because the ten burner stove was not hooked up or in use at the time the application was submitted and was never intended to be used for cooking. However, Williams does not dispute that the ten burner stove was not covered by a fire suppression system, nor does he deny that at the time he submitted his application there was an uncorrected fire code violation. These facts render his statements in the application false,

and material. According to Andy Roe, the Vice President of the company that underwrote the subject policy, he would not have underwritten the policy of insurance if he knew these statements were false, or would have cancelled the policy upon discovering these false representations. The Michigan Supreme Court has indicated that:

> The generally accepted test for determining the materiality of a fact or matter as to which a representation is made to the insurer by an applicant for insurance is to be found in the answer to the question whether reasonably careful and intelligent underwriters would have regarded the fact or matter, communicated at the time of effecting the insurance, as substantially increasing the chances of loss insured against so as to bring about a rejection of the risk or the charging of an increased premium.

Keys v. Pace, 358 Mich. 74, 81, 99 N.W. 2d 547 (1959); see also, Oade v. Jackson Nat'l Life Ins. Co., 465 Mich. 244, 254, 632 N.W. 2d 126 (2001) ("[A] fact or representation in an application is material where communication of it would have had the effect of substantially increasing the chances of loss insured against so as to bring about a rejection of the risk or the charging of an increased premium."). Thus, American Western's rescission of the policy was warranted based on the misrepresentations, either intentionally or innocently made, contained in the application for insurance coverage.

Williams's reliance on West v. Farm Bureau Mutual Ins. Co., 402 Mich. 67; 259 N.W. 2d 556 (1977) is unavailing. Williams's relies on West arguing that because the statements in his application for insurance were innocently made without knowledge of their falsity, American Western did not have the authority to rescind his policy. Specifically, the West court held that "a false claim regarding a small portion of the loss may not result in forfeiture of the entire coverage unless the insured is shown to be clearly culpable." Id. at 69. In so concluding, the West court relied on the subject policy which stated that the policy was "void, if whether before or after a loss, the insured has wilfully concealed or misrepresented

any material fact or circumstance concerning this insurance or the subject thereof . . . ." Id. at 68.

Further, the policy at issue in West was governed by former MICH. COMP. LAWS § 500.2832, which required that insurance policies contain language that the policy was void if the insured willfully concealed or misrepresented a material fact concerning the insurance, whereas here, the policy at issue is governed by MICH. COMP. LAWS § 500.2833(c), which requires only that the policy include language that "[t]he policy may be void on the basis of misrepresentation, fraud, or concealment[,]" without regard to the willfulness of the concealment, misrepresentation or fraud. MICH. COMP. LAWS § 600.2833(c);see also, Martin v. Farm Bureau Gen. Ins. Co., No. 275261, 2008 Mich. App. LEXIS 819, at *6 (Mich. App. Apr. 22, 2008) ("Because the willful and material language is no longer present in the statute, and the policy language does not require the insured to have intentionally committed fraud or false swearing about material facts or circumstances, manifest injustice did not result by the absence of an instruction regarding intent and materiality.") Here, the policy language does not require willfulness or intentional misrepresentation to void the policy, it states that "[t]his Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time." Therefore, for the reasons outlined above, West is distinguishable from the present matter.

Because the court concludes that Williams's is not entitled to relief on his breach of contract claim, his claim under the Michigan Trade Practices Act, MICH. COMP. LAWS § 500.2001 et seq. also fails on the merits. American Western did not violate the Act by failing to pay plaintiff's claim within sixty (60) days of submitting his proof of loss without good cause to do so because American Western was authorized under Michigan law to

rescind the subject policy based on its reliance on Williams's material misrepresentations in his application for insurance.

IV. CONCLUSION

Accordingly,

American Western's motion for summary judgment [#7] is GRANTED. This cause of action is dismissed.

SO ORDERED.

Dated: February 14, 2012

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on February 14, 2012, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk